IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Jose L. Torres,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RRD Holding Company, d/b/a Rock River Disposal Services, Inc.,<br><br>　　　　Defendant. | Case No. 3:19-cv-50065<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jose Torres brings this action against Rock River Disposal (RRD) under the Americans with Disabilities Act (ADA) and Title VII of the Civil Rights Act of 1964. Before the Court is RRD's motion for summary judgment on both claims. For the reasons explained below, that motion [77] is granted.

**I.　Background**

Jose Torres began his employment as a residential garbage truck driver with RRD in September 2014. Dkt. 82, ¶ 3–4. On January 4, 2018, he injured his shoulder and filed a workers' compensation claim. *Id.* ¶ 4. Because of his injury, Dr. Michael Birman recommended he be restricted from any overhead use of the right arm and shoulder and from lifting, pushing, or pulling more than five pounds. *Id.* ¶ 11. Based on these restrictions, RRD determined that Torres could not perform the essential functions of his positions as a residential driver, so it placed him on unpaid leave. *Id.* ¶¶ 15, 37. Because he remained medically restricted, Torres stayed on unpaid until January 9, 2019, more than a year after his injury. *Id.* ¶ 37.

1

At that time, RRD terminated his employment pursuant to its interpretation of the collective bargaining agreement. *Id.* ¶ 40. RRD explained that Dr. Birman could not provide any certainty regarding when Torres's medical restrictions would be lifted, such that he would be able to perform the essential functions of his position. *Id.* Torres' surgery was not yet scheduled, and he would need between four and six months to recuperate after that surgery.[1] *Id.*; *see also id.* ¶¶ 14, 30, 34 (noting the continuance of Torres medical restrictions throughout the year).

Though RRD had already determined that Torres could not perform the essential functions of his position, it sent Dr. Birman a copy of the job description and requested that he opine on the matter. In his response, he unambiguously explained that Torres could not perform those functions.[2] *Id.* ¶ 31. Still, Torres correctly responds that Dr. Birman took all duties into consideration and that Dr. Birman opined that Torres was "OK to drive." *Id.* at 261–62 (Dr. Birman's medical assessment exhibit). On later paperwork, however, Dr. Birman removed the "OK to drive" note. *Id.* ¶ 263. (At the risk of jumping the legal analysis gun, this fact alone essentially dooms Torres' claim. *See Alexander v. Northland Inn.*, 321 F.3d 723, 727 (8th Cir. 2003) ("The ADA does not require an employer to permit an employee to

---

[1] The facts show some dispute regarding why the surgery had not yet happened. As Torres tells it, the delays are due to RRD operating in bad faith regarding Torres' health insurance and his workers' compensation claim. RRD points to Torres' not paying his health insurance premiums, notwithstanding his status as being on unpaid leave. Still, these facts are not necessary to the disposition of the present motion.

[2] RRD and Torres disagree regarding whether Torres could perform some aspects of the job. For example, Torres asserts that no driver is ever required to jack up the cab and that he has never had to himself. Other disputes exist as well. To the extent that Torres could argue that certain functions are not essential, but are instead marginal based on their limited necessity, that dispute would not change the outcome of the Court's opinion.

2

perform a job function that the employee's physician has forbidden."); *see also Ferrari v. Ford Motor Co.*, 826 F.3d 885, 897 (6th Cir. 2016) (relying on independent medical opinion regarding job restrictions rebuts claims of pretext).)

Notwithstanding the "OK to drive" note, Dr. Birman restricted Torres to no more than five pounds of lifting, pulling, or pushing. *Id.* at 261–62. RRD determined that these restrictions prevented Torres from performing the essential functions of his position even if he were afforded reasonable accommodations. Torres, on the other hand, asserts that he could still drive the truck with his left arm, and thus could still perform his job as a driver if RRD assigned him a helper to perform the physical exertion requirements of the job. Torres Dep. 34:5–6, 233:3–12. (As shown later, this assertion is a legal non-starter. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) (requiring an employer to hire another employee to basically perform the plaintiff's essential job functions is not a *reasonable* accommodation).) Still, Torres admitted in his deposition that safety requirements mandate using both hands to drive. *Id.* 38:8–11.

Torres requested reassignment to a light duty position. Primarily, he wanted to be assigned a helper, which effectively means he would have been assigned to a two-person crew. At the time, however, no two-person crew positions were available. Dkt. 82, ¶¶ 8, 23. He also asked to be reassigned to a night fueling position. *Id.* ¶ 8. RRD, however, determined that Torres was unable to perform the night fueling position because of his restrictions, partially because night fueling also requires operating a steering wheel, though Torres explains that it only requires driving

3

across the street. *Id.* ¶ 9; McDowell Dep. 86:5–24. The night fueling position also would have required Torres to pull himself in and out of the trucks thirty to thirty-five times per night, which RRD felt was not possible with Torres' restrictions. *Id.*; Calvert Dep. 16:19–24, 17:1–5; McDowell Dep. 86:5–24.

Torres also requested reassignment to light duty filing maps or cleaning up debris in the yard. Dkt. 82, ¶¶ 14, 29. But although Torres believed he could be reassigned to those tasks, no such positions were vacant.[3] *Id.* ¶¶ 15, 29. During an August 3, 2018 meeting, HR Manager Alisa Marinelli suggested that Torres might apply for a position in customer service. *Id.* ¶ 28. But Torres was not qualified for that role due to a lack of experience and computer skills, and he also apparently did not want that position because it would have required that he give up his union status. *Id.* In the end, Torres was not reassigned to another position and remained on unpaid leave. After more than twelve months had passed, RRD terminated his employment. *Id.* ¶¶ 37, 40.

## II. Analysis

Summary judgment is warranted if the evidence presents no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The Court must "construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 533 (7th Cir. 2013) (quoting *Goetzke v. Ferro Corp.*, 280 F.3d 766, 774 (7th Cir.

---

[3] Torres disputes this fact by noting that he had seen an individual named "Lurch" filing maps after suffering an injury. He explains that another employee, David DeWitt, filed route maps while on restrictions. But those facts do not rebut the contention that no such position was vacant *at the time*. Dkt. 82, ¶ 29.

4

2002)). The initial burden lies with the movant to either show an absence of evidence supporting an essential element or to present affirmative evidence showing that an essential element cannot be satisfied. *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016). Then, the burden shifts to the nonmoving party to present evidence that establishes a genuine issue of material fact as to that element.[4] *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) ("Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case."). But a dispute of fact is only material if it might affect the outcome of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### a. Americans with Disabilities Act

The Americans with Disabilities Act (ADA) proscribes employment discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). This includes failing to accommodate the known disabilities of a qualified individual who is an applicant or already an employee,

---

[4] RRD argues that the Court should not consider Torres' unsworn declaration as evidence for the purpose of summary judgment. RRD relies on the sham affidavit doctrine and generally the rules at the summary judgment stage. To be sure, the Court will not usually accept a declaration that contradicts prior sworn deposition testimony, especially when that prior testimony is unambiguous. *Martin v. Noble Cnty. Sheriff's Dep't*, No. 1:18-cv-121, 2021 U.S. Dist. LEXIS 1053, at *40–41 (N.D. Ind. Jan. 4, 2021) (quoting *James v. Hale*, 959 F.3d 307, 315–16 (7th Cir. 2020)). But the unsworn declaration itself is proper evidence. 28 U.S.C. § 1746. The truth of the declaration is signed and dated under penalty of perjury. That is all the relevant section requires. § 1746(2).

unless the employer can show that such accommodation would impose an undue hardship on the employer's business operations. 42 U.S.C. § 12112(b)(5)(A).

To establish a failure to accommodate claim under the ADA, plaintiffs must show that they (1) are a qualified individual with a disability, (2) the employer was aware of that disability, and (3) the employer failed to reasonably accommodate the disability. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015). RRD moves for summary judgment on Torres' failure to accommodate claim. Because Torres cannot show that he is a qualified individual with a disability, the Court does not consider the other elements. On this claim, RRD is entitled to judgment as a matter of law.

A failure to accommodate claim cannot exist unless the plaintiff is a qualified individual with a disability. The text of the ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Thus, if employees are unable to perform the essential functions of their positions even with reasonable accommodation, they are not "a qualified individual" under the ADA unless the employer has another position available that the employee desires, is qualified for, and can perform the essential functions of with or without reasonable accommodation. *See* 29 C.F.R. § 1630.9 (further focusing failure to accommodate claims on "an otherwise qualified applicant or employee").

Here, Torres was already employed by RRD as a residential driver, but he requested reassignment to other positions as a reasonable accommodation following

6

his work-related injury. Usually, employee reassignments to other positions under the ADA relate to the reasonable accommodation element. *See, e.g.*, *Malabarba v. Chicago Tribune Co.*, 149 F.3d 690, 699 (7th Cir. 1998) (quoting *Gile v. United Airlines, Inc.*, 95 F.3d 492, 498 (7th Cir. 1996)). But employers are not required to make reasonable accommodations if the employee is not a qualified individual under the ADA. *Connors v. Wilkie*, 984 F.3d 1255, 1262 (7th Cir. 2021). That is the threshold question. As explained above, people are not qualified if they would not be able to perform the essential functions of their position or of another vacant position they desire, even with reasonable accommodation. *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 820–21 (7th Cir. 2017) (explaining that "[a] disabled employee need not be the most qualified applicant for a vacant position, but she must be qualified for it").

The statute also instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 12111(8). Other factors in determining whether a job duty is an essential function rather than a merely marginal function include the job description, the amount of time performing that function, the consequences for not requiring the incumbent employee to perform that function, the work experience of past incumbent employees, and the terms of any collective bargaining agreement. 29 C.F.R. § 1630.2(n)(3); *Emerson v. N. States Power Co.*, 256 F.3d 506, 512–513 (7th Cir. 2001). Furthermore, a business is permitted to set necessary qualification standards, which includes safety standards. 29 C.F.R. §§ 1630.2(q), 1630.10(b).

7

Torres worked for RRD as a residential driver. The residential driver job description explains that the position requires "near-continuous physical exertion, such as repetitive lifting, pushing, and pulling receptacles that weigh up to 75 pounds." Dkt. 82, at 275. It then reiterates that residential drivers must be able to lift, carry, push, and pull "at least 75 pounds repeatedly throughout the workday" and that they will need to climb in and out of the garbage truck as often as 300 times per day. *Id.*

Torres was not able to perform the essential functions of the residential driver position. After his injury, RRD put him on unpaid leave because of his medical restrictions: a shoulder injury resulting in no overhead use; and ability to lift, push, and pull limited to only five pounds. Dkt. 82, at 261. Later, RRD asked Torres' doctor to review the residential driver job description and opine on whether Torres could do that job based on his current restrictions. *Id.* at 271. His doctor concluded that he could not. *Id.* at 277–78. Torres concedes that point but contends that he could still drive the garbage truck. *Id.* ¶¶ 30–31. In effect, Torres differentiates between working as a residential driver on a one-person crew and working as a residential driver on a two-person crew. He explains that he could work on a two-person crew as the driver, with a helper performing the functions requiring physical exertion. In other words, Torres concedes that he cannot perform the essential functions of his job without an accommodation, but argues that he can

8

perform the essential functions of his job if RRD accommodates him by hiring a helper to do those essential functions that he cannot do.[5] Dkt. 81, at 9.

First, whether Torres worked on a one- or two-person crew, he would be required to drive a large garbage truck. He does not see that as a problem. *Id.* (explaining that "he could perform all driving and inspection-related tasks with his left arm or hand"). But Torres concedes that safety protocol calls for using two hands while driving. Torres Dep. 38:8–11. Although Torres' doctor never explicitly said he could not drive, he did remove the "OK to drive" indication from the medical reports. *Compare* Dkt. 82, at 261–62, *with* Dkt. 82, at 263. And regardless, all of those cited medical reports indicate that Torres' was medically restricted from applying more than five pounds of pressure with one arm and shoulder. *Id.*

Torres' contention that he can drive is based on his belief that he should be allowed to drive with only one hand.[6] Dkt. 81, at 9. But RRD is entitled to have qualification standards to ensure proper safety, and Torres already admitted that safety protocol requires driving with two hands. 29 C.F.R. §§ 1630.2(q), 1630.10(b); Torres Dep. 38:8–11. Thus, even if employing a helper to perform the physical elements of his job was a reasonable accommodation, he still would not be able to perform the essential functions of the residential driver position.

---

[5] The Court notes that a two-person crew existed at the time, but no two-person crew positions were vacant.
[6] Torres, in his unsworn declaration, states that he does not believe the restriction prevents him from driving. He explains that he can hold the steering wheel with both hands and turn with his left hand. Dkt. 82-3, ¶ 11. Still, full use of both hands is a reasonable safety expectation when operating a large garbage truck.

9

Second, even if Torres could drive the garbage truck, asking an employer to hire someone to act as a helper is not a reasonable accommodation. In *Cochrum v. Old Ben Coal Co.*, the plaintiff's personal doctor recommended medical restrictions after a shoulder injury that prevented him from performing the essential functions of his job as a roof bolter. 102 F.3d 908, 909 (7th Cir. 1996). The company suspended him because no other job was available that he could perform. *Id.* Although the plaintiff argued that hiring a helper was a reasonable accommodation, the Seventh Circuit disagreed. It explained, "Most notably, hiring a helper to perform the overhead work would mean the helper would de facto perform Cochrum's job." *Id.* at 912. In *Majors v. Gen. Elec. Co.*, the Seventh Circuit (quoting *Cochrum*) reiterated that "[t]o have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation." 714 F.3d 527, 534 (7th Cir. 2013).

Just as in *Cochrum* and *Majors*, RRD is not expected to hire a helper to perform the essential functions of Torres' position; that is not a reasonable accommodation. Because Torres cannot perform the essential functions of his position as a residential driver with or without reasonable accommodation, he can only be a qualified individual under the ADA if he can point to a vacant position that he desires and of which he can perform the essential functions. *Brown*, 855 F.3d at 820–21 (requiring an individual to be qualified for a *vacant* position) (emphasis added).

10

Torres argues that he is a qualified individual under the ADA because he could also perform the essential functions of a night fueler, even without accommodation. Dkt. 81, at 9. He does not, however, argue that a night fueler position was vacant. *Id.* at 9–11. Instead, he argues that RRD contradicts itself by admitting that other employees were previously offered light duty positions "in the form of office work, night fueling, training employees, and providing employees temporary helpers." *Id.* at 10. Torres asserts that these positions were not "necessarily vacant" at the time and were created as accommodations for those employees. *Id.* Effectively, he argues that alternative positions do not need to be vacant for him to be a qualified individual under the ADA. But that is not the law. Although RRD must offer reasonable accommodation, Torres is not qualified under the ADA unless that accommodation allows him to perform the essential functions of his position or a vacant position that he desires. *Conners v. Wilkie*, 984 F.3d 1255, 1262 (7th Cir. 2021). And RRD does not have to create new positions for him. *Majors*, 714 F.3d at 534.

Torres does not argue in response that a night fueling position was available, just that he could perform the functions of that role. Dkt. 81, at 9–11. RRD disputes whether he could perform those functions. Dkt. 84, at 11. In *Connors v. Wilkie*, the Seventh Circuit explained that the plaintiff bears the burden of showing that a vacant position exists that he or she is qualified for. 984 F.3d at 1262. There, the Court affirmed summary judgment to the defendant because Connors "offered no evidence that she could perform the essential functions of any vacant position." *Id.*

11

The same is true here. Torres has not pointed to a vacant position for which he can perform the essential functions. But even if a night fueler position were available, that would have required Torres to drive large trucks (at least back and forth across the street) and would have required him to pull himself in and out of the truck thirty to thirty-five times per shift. Thus, RRD determined that he was not able to perform the essential functions of that position. Dkt. 82, ¶ 9; McDowell Dep. 86:5–24. For the same reasons that Torres could not perform the essential functions of the driver position, RRD's contention that he could not work as a night fueler was entirely reasonable.[7]

In the alternative, Torres argues that he still qualifies merely because his injury was worked related. Dkt. 81, at 9. Specifically, Torres points to an EEOC enforcement guidance document for the proposition that RRD must reassign Torres to another position because the injury was work-related. *Id.* Not so. Consistent with the Seventh Circuit's opinion in *Connors v. Wilkie,* the cited enforcement guidance contemplates reassignments to *vacant* positions. *EEOC Enforcement Guidance Workers' Compensation and the ADA*, 1996 WL 33161342, at *10 (Sept. 1, 1996). Furthermore, the next paragraph of that guidance document specifically notes that

---

[7] Torres filed an unsworn declaration in which he contends that he could have performed the essential functions of the night fueler position. Dkt. 82-13, ¶ 7. He asserts that the shoulder injury and medical restrictions did not prevent him from pulling himself into the trucks and that he can drive the trucks. *Id.* He notes that he continued driving his personal vehicle during this period. But Torres' personal opinion that he could perform those functions does not create a dispute of fact. Regardless of whether he drove his personal vehicle with one hand, he already admitted that safety protocol calls for using two hands and RRD is entitled to require that employees are able to safely drive the garbage trucks. Torres Dep. 38:8–11; 29 C.F.R. §§ 1630.2(q), 1630.10(b).

12

the "ADA does not require an employer to create a new position or to bump another employee from his/her position in order to reassign an employee who can no longer perform the essential functions of his/her original position, with or without a reasonable accommodation." *Id.*, at *11. Thus, the cited guidance document further supports the conclusion that Torres must point to a vacant position and that RRD was not required to create a position for him.

Therefore, the undisputed facts show that Torres was not a qualified individual under the ADA. Because he cannot prove that element of his failure to accommodate claim, summary judgment must be granted to RRD.

### b. Title VII of the Civil Rights Act

In Count II, Torres claims that RRD violated Title VII of the Civil Rights Act by discriminating against him because of his race or national origin. Dkt. 1, ¶¶ 41–43. Under the *McDonnell Douglas* burden-shifting method, the plaintiff must first show (1) that he is a member of a protected class; (2) that he performed his job to his employer's expectations; (3) that he suffered an adverse employment action; and (4) that one or more similarly situated persons outside his protected class received better treatment. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 500 (7th Cir. 2017). If the plaintiff meets this burden, the employer must show a legitimate and nondiscriminatory reason for its actions. *Id.* If the employer can do that, then "the burden shifts back to the plaintiff to produce evidence establishing a genuine dispute of fact about whether the employer's reason was a pretext for discrimination." *Id.*

This framework offers "a formal way of analyzing" a case of discrimination. *Id.* (quoting *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 905 (7th Cir. 2015)). But at bottom, the Court's fundamental task on summary judgment for any employment discrimination claim is to determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action." *Id.* at 499 (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

RRD argues that it is entitled to judgment as a matter of law because Torres cannot point to any similarly situated persons outside of his protected class that were treated more favorably. Dkt. 79, at 32. In determining whether an individual is similarly situated, the Court does not require individuals to be completely identical. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 730 (7th Cir. 2011). Rather, a plaintiff must point to comparators with "substantial similarity" based on the relevant factors of the case. *Id.* "The question is whether the other employees' situations were similar enough to the plaintiff's that it is reasonable to infer, in the absence of some other explanation, that the different treatment was a result of race or some other unlawful basis." *Id.*

Torres points to Troy Ogden, a Caucasian employee that was terminated for inappropriate behavior. Ogden was later reinstated. Dkt. 81, at 13. Torres also identifies Mike Wright, another Caucasian employee, who was terminated for tampering with a safety device. *Id.* Torres explains that Wright's conduct was

14

proscribed by the collective bargaining agreement. *Id.* Notwithstanding the CBA violation, Wright's employment was reinstated. Essentially, Torres contends that these two individuals are comparators in the sense that they did something to violate the CBA but were reinstated even though RRD justifies Torres' termination by explaining that it was required under the CBA. *Id.*

To be sure, all three individuals appear to have violated the collective bargaining agreement—the purported comparators by misconduct and Torres because his leave of absence exceeded the twelve-month limit. But Torres does not explain how this similarity is "substantial" enough to warrant an inference that the treatment was a result of his race or national origin. Torres explains that RRD's treatment of Wright and Ogden show that the company "does not strictly follow the CBA's termination process for its Caucasian employees." *Id.* But those two individuals presented starkly different situations. They engaged in misconduct, which can potentially be addressed and resolved through discipline. Torres, on the other hand, was terminated because after more than twelve months he still was unable to perform the essential functions of his job. That cannot be fixed through internal procedures like discipline.

The Court does not expect Torres to point to putative comparators that violated the exact same section of the CBA, nor would that be dispositive of this element. *Compare Coleman v. Donahoe*, 667 F.3d 835, 851 (7th Cir. 2012) (overturned on other grounds) ("Where a proposed comparator violated the same rule as the plaintiff in an equivalent or more serious manner, courts should not

15

demand strict factual parallels."), *with Johnson v. Artim Transp. Sys., Inc.*, 826 F.2d 538, 543 (7th Cir. 1987) ("Furthermore, company discipline rules are not conclusive indicators or comparable seriousness. Even if a plaintiff shows different treatment after violations of the same rule, he or she might not succeed in establishing a prima facie case."). But without more, the difference in the type of CBA violation at issue in this case dispels any inference of discrimination.[8] Thus, Ogden and Wright are not substantially similar, such that an inference of discrimination would arise.[9]

Torres also identifies Cody Drummer, Kipton Minor, and David DeWitt as putative comparators. Dkt. 81, at 13. He explains that they, also residential drivers, were treated more favorably following their injuries. *Id.* at 13–14. RRD argues that the cited individuals are not comparators because, unlike Torres, they could perform the essential functions of their jobs or of an available light duty position. Dkt. 79, at 15.

Cody Drummer was placed on two leaves of absence. After the first, he was assigned to a night fueler position, which was available and not created for him.

---

[8] Even if Torres had violated a disciplinary rule, like Wright and Ogden, he would still have to show that the he shared a supervisor with them, "were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances that as would distinguish their conduct or the employer's treatment of them." *Weber v. Universities Research Ass'n*, 621 F.3d 589, 594 (7th Cir. 2010) (quoting *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002)). He has not done this.
[9] Torres also points to Bobby Lupton and Jarrod Danielewicz. He contends that both engaged in repeated safety violations but were still reinstated by RRD. He does not provide any further detail about these individuals or how they are comparable, other than that they held the same position. Dkt. 81, at 14. Thus, the same reasoning that applies to Ogden and Wright also applies to Lupton and Danielewicz.

16

Dkt. 82, ¶ 72. Notably, and unlike Torres, Drummer did not have any weight-lifting restrictions.[10] *Id.* ¶¶ 16, 72. Although Drummer was off work longer than Torres, he was not on leave for more than twelve consecutive months. Calvert Dep. 50:8–10; Alexander Dep. 40:12–20; Dkt. 82, ¶¶ 71–72. Torres disagrees as to the length of Drummer's absences but cites no evidence in support. He instead explains, in his unsworn declaration, that he never saw Drummer at work. He notes that Drummer showed up to the 2016 Christmas party using a wheelchair and that he had a halo on his head. *Id.* Because he had not seen Drummer work between the injury and the party, Torres concludes that Drummer was off more than twelve months. *Id.* But that speculation does not effectively counter the sworn testimony to the contrary. Regardless, nothing in the record shows that Drummer's circumstance was substantially similar to Torres because the record contains no indication that Drummer was unable to drive when he returned or that the company created a light duty position for him. Thus, the fact that he was reassigned to a night fueling position, while Torres was not, does not raise an inference of discrimination.

Like Torres, Kipton Minor suffered a shoulder injury. But he was assigned to a night fueler position. Nothing in the record, however, explains the circumstances surrounding his assignment to that position. Dkt. 82, ¶ 70. In response, Torres provides no further detail. Dkt. 81, at 13 (summarily arguing that Drummer, Minor and DeWitt were treated more favorably). But even a review of the record outside of the Local Rule 56.1 statements reveals no evidence regarding how Kip Minor was

---

[10] Torres disagreed with this paragraph in the Local Rule 56.1 fact statements, but he did not counter the statement that Drummer lacked weight restrictions. Dkt. 82, ¶ 72.

17

substantially similar to Torres. That is not good enough to defeat summary judgment. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) (explaining that speculation is not enough, the parties must present evidence); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) ("Thus, to survive summary judgment, the nonmoving party must present evidence sufficient to establish a triable issue of fact on all essential elements of its case.").

Finally, Torres points to David DeWitt, the employee currently occupying the only two-person residential driver position at RRD. Dkt. 81, at 7. But DeWitt is able to drive. Under the facts of this case, DeWitt's ability to drive the garbage truck (while adhering to safety protocol) distinguishes him from Torres.

Thus, RRD is entitled to judgment as a matter of law on Torres' Title VII claim because, after the aid of discovery, he has not met his initial burden under the *McDonnell Douglas* framework.

### III. Conclusion

For the reasons explained above, RRD's motion for summary judgment [77] is granted. Civil case terminated.

Date: June 10, 2021

                                                    Honorable Iain D. Johnston
                                                    United States District Judge
                                                    Northern District of Illinois
                                                              Western Division